# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GEVO, INC., | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | C.A. No.  13-576-SLR |
| | ) | |
| BUTAMAX(TM) ADVANCED BIOFUELS | ) | **JURY TRIAL DEMANDED** |
| LLC, E. I. DUPONT DE NEMOURS AND CO., | ) | |
| | ) | **PUBLIC VERSION** |
| Defendants/Counterclaimants. | ) | |
| | ) | |

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteranderson.com

OF COUNSEL:

Leora Ben-Ami
Thomas F. Fleming
Christopher T. Jagoe
Oliver C. Bennett
Benjamin A. Lasky
Peter B. Silverman
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
Tel:  (212) 446-4800

*Attorneys for Plaintiff/Counterclaim Defendant*
*Butamax^{TM} Advanced Biofuels LLC*

*Attorneys for Plaintiff/Counterclaim Defendant*
*Butamax^{TM} Advanced Biofuels LLC and*
*Counterclaim Defendant E. I. du Pont*
*de Nemours and Company*

Dated:  November 8, 2013
PUBLIC VERSION
Dated:  November 19, 2013
1130671 / 36429

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND ..................................................................................................2

NATURE AND STAGE OF THE PROCEEDINGS ..............................................................4

ARGUMENT...........................................................................................................................5

    I.     Legal Background .............................................................................................5

    II.    Despite being aware of evidence that Butamax does not infringe the '375
           and '376 patents, Gevo Failed to Conduct an Adequate Pre-filing
           Investigation and unreasonably maintained the lawsuit.........................................6

          A.    Gevo Failed To Undertake A Simple Pre-Filing Inquiry That Would
                  Have Indicated To a Reasonable Patentee That Butamax Does Not
                  Infringe The '375 or '376 Patents .....................................................6

          B.    Gevo's Own Prosecution History Must Have Led Gevo to
                  Conclude From the Beginning that it Could Not Assert a Claim
                  Under The Doctrine Of Equivalents for the '375 Patent .........................13

          C.    Gevo's Position on Infringement of the '376 Patent Under the
                  Doctrine of Equivalents Amounts to Asserting That Opposites are
                  Equivalent ...........................................................................................15

          D.    Gevo Relied on a Claim Construction That It Refused To Share
                  With The Court And Which Was Clearly Contradicted by the
                  Patent Specifications and Prosecution Histories As a Basis to
                  Initiate and Maintain The Lawsuit ......................................................16

    III.   IN LIGHT OF THE EXCEPTIONAL NATURE OF THIS CASE, THE
           COURT SHOULD AWARD BUTAMAX ITS ATTORNEYS' FEES AND
           COSTS ............................................................................................................20

CONCLUSION.......................................................................................................................20

## TABLE OF AUTHORITIES

**CASES**                                                                                             **Page(s)**

*Abraskin v. Entrecap Corp.,*
   55 F. Supp. 2d 224 (S.D.N.Y. 1999)
   *aff'd,* 2000 WL 961362 (Fed. Cir. July 11, 2000) (per curiam)................................................20

*Astrazeneca AB v. Dr. Reddy's Labs, Ltd.,*
   07 CIV. 6790 (CM), 2010 WL 1375176 (S.D.N.Y. Mar. 30, 2010)...................................15, 20

*Avocet Sports Tech. Inc. v. Polar Electro, Inc.,*
   No. C-12-02234 EDL, 2013 WL 4067823 (N.D. Cal. Aug. 1, 2013) .....................................10

*Beckman Instruments, Inc. v. LKB Produkter AB,*
   892 F.2d 1547 (Fed. Cir. 1989) ....................................................................................................5

*Computer Docking Station Corp. v. Dell, Inc.,*
   519 F.3d 1366 (Fed. Cir. 2008) ....................................................................................................6

*Digeo, Inc. v. Audible, Inc.,*
   505 F.3d 1362 (Fed. Cir. 2007) ....................................................................................................5

*Eltech Sys. Corp. v. PPG Indus., Inc.,*
   710 F. Supp. 622 (W.D. La. 1988), *aff'd in relevant part,* 903 F.2d 805 (Fed. Cir. 1990)..10, 19

*Eltech Sys. Corp. v. PPG Indus., Inc.,*
   903 F.2d 805 (Fed. Cir. 1990) ......................................................................................................6

*Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.,*
   279 F.3d 1022 (Fed. Cir. 2002) ...............................................................................................5, 6

*Haynes Int'l Inc. v. Jessop Steel Co.,*
   8 F.3d 1573 (Fed. Cir. 1993) ........................................................................................................6

*In re Cyclobenzaprine Hydrochloride Extended Release Capsule Patent Litig.,*
   C.A. No. 09-MD-2118-SLR, 2012 WL 95592 (D. Del. Jan. 12, 2012) ...............................5, 6

*Int'l Rectifier Corp. v. Samsung Elecs. Co., Ltd.,*
   424 F.3d 1235 (Fed. Cir. 2005) ....................................................................................................5

*Intamin Ltd. v. Magnetar Techs, Corp.,*
   483 F.3d 1328 (Fed. Cir. 2007) ..................................................................................................10

*Judin v. United States,*
   110 F.3d 780 (Fed. Cir. 1997) ....................................................................................................10

*Mathis v. Spears*,
    857 F.2d 749 (Fed. Cir.1988) ................................................................................5

*Multi-Tech, Inc. v. Components, Inc.*,
    708 F. Supp. 615 (D. Del. 1989) .......................................................................6, 14

*Phonometrics, Inc., v. Westin Hotel Co.*,
    350 F.3d 1242 (Fed. Cir. 2003) ..........................................................................5, 6

*Q-Pharma, Inc. v. Andrew Jergens Co.*,
    360 F.3d 1295 (Fed. Cir. 2004) .............................................................................10

*Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*,
    549 F.3d 1381 (Fed. Cir. 2008) ..............................................................................5

**STATUTES**

35 U.S.C. § 285 ....................................................................................................passim

35 U.S.C. § 295 .............................................................................................................1

Defendants Butamax™ Advanced Biofuels LLC and E. I. du Pont de Nemours and Company (collectively, "Butamax") respectfully submit this Memorandum in Support of their Motion for Attorneys' Fees and Expenses, pursuant to 35 U.S.C. § 285 and the Court's inherent authority.

## INTRODUCTION

It is not Defendants' position that a party's loss of a case should be the sole basis for attorney's fees; that is not our system. Nor is it Defendants' position that losing a motion for summary judgment should serve as the basis for an award of attorney's fees; again, that is not our system. Rather, this case presents unique facts which implicate whether a party can bring a case when it has been told in advance that the target is not using the claimed technology and where the soon-to-be alleged infringer offers to disclose its product pre-suit to show that the public information about that accused product is outdated. It is because the facts here are so unusual— Gevo refused to investigate when investigation was required—and Gevo's behavior goes so against public policy, that Defendants make this motion.

Section 295 of the patent law allows a party who has a patent with product-by-process claims to seek information from a putative infringer with a product about what processes were used to make that product. If the putative infringer refuses to provide the information, the patentee is free to assume that the product was made by the patented process and can sue that infringer. The scenario here is just the converse. Butamax, as the putative infringer, offered Gevo, the patentee, extensive information relating to the non-infringement of Gevo's patents, and even offered to provide testing by a neutral party. Gevo refused to obtain this information, ignored this information, and acted with studied indifference. Based on the principle behind section 295, Gevo should not be permitted to claim that it had any legitimate basis for suing Butamax.

Gevo knew all this, yet persisted in forcing Butamax to participate in two years of litigation. Indeed, the Court disposed of Gevo's infringement claims as to both patents on summary judgment, and also found the '375 patent invalid. Defendants respectfully submit that these facts support a finding that this case is exceptional within the meaning of § 285, and the Court's inherent power. Should the Court grant this application and find that this case is exceptional, Butamax respectfully requests the opportunity to submit for the Court's consideration a detailed request for fees and expenses.

## FACTUAL BACKGROUND

After the Patent Office announced that Gevo's U.S. Patent Nos. 8,017,375 ("the '375 patent") and 8,017,376 ("the '376 patent") would issue, Butamax informed Gevo that it would not infringe the claims of either of those patents. In September 2011, Butamax sent Gevo a letter describing in detail its bases for non-infringement. (Ex. 1). Those bases were clear and simple: Butamax's yeast strains did not contain key elements in the claims of either of Gevo's patents (and the examples from earlier Butamax patent filings were different and outdated, and were not Butamax's then current strains). (*Id.* at 1). Butamax also offered Gevo the opportunity to have an independent expert test Butamax's strains to verify the facts of non-infringement. (*Id.*). Gevo ignored Butamax's offer, instead suing Butamax days later, as soon as Gevo's patent issued.

Several months earlier, in January 2011, Butamax had filed an action against Gevo, asserting infringement of Butamax's U.S. Patent Nos. 7,851,188 ("the '188 patent") and 7,993,889 ("the '889 patent"). (11-54 D.I. 1).[1] Gevo asked for, and was granted, a courtesy extension to respond to that case, purportedly to "consider" the claims of one of Butamax's asserted patents. (Ex. 2; 11-54 D.I. 45). But when it asked for the extension, Gevo already had

---

[1]   All D.I. numbers relating to the original C.A. No. 11-54-SLR are indicated by (11-54 D.I. __). All other D.I. numbers relate to the severed action, C.A. No. 13-576.

–2–

received Notices of Allowance for the '375 and '376 patents and was undoubtedly expecting them to issue soon. (11-54 D.I. 513 at GJA3003; 11-54 D.I. 514 at GJA4403). So instead of taking Butamax up on its offer to test and verify that Butamax's strains did not infringe any claims of its soon-to-issue patents, Gevo filed counterclaims, accusing Butamax of infringement within minutes of the PTO's midnight issuance of Gevo's '375 and '376 patents. (D.I. 4). Gevo's counterclaims were predictably vague: "[t]hese allegations have evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." (*Id.*, ¶¶ 18, 28). The counterclaims, however, did not allege or acknowledge that Butamax had already offered Gevo a more-than-reasonable opportunity to conduct such an investigation, which Gevo had ignored. That Butamax's strains could not infringe Gevo's claims did not deter Gevo from alleging, *inter alia*, literal infringement. (*Id.*, ¶¶ 19-23, 29-31). To the contrary, the same day it filed it counterclaims, Gevo—a publically traded company—issued a press release touting the newly issued '375 and '376 patents, announcing that it had "filed a lawsuit against Butamax™ and its affiliate DuPont," (Ex. 3), and Gevo's underwriter issued a comment publicizing the lawsuit and noting that "[t]he countersuit gives Gevo a third strategy," namely, causing Butamax and DuPont to have to undertake "preparation and discovery for the pending court dates to respond to the original infringement allegations – which now includes all relevant personnel and material at DuPont that were involved with Butamax." (Ex. 4 at 1). As is apparent from Gevo's public statements, the purpose of its counterclaims was none other than to gain advantage in the marketplace and to harm Butamax.

In the early disclosures provided by Butamax to Gevo to confirm the non-infringement of its strains, Butamax identified a specific yeast strain, ███████, as prototypical of the strains Butamax was advancing in commercial development and provided detailed information on the

genetic makeup of the strain. (Ex. 5 at 2). ███████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████ Gevo's response was to contend that there were issues of claim construction that justified maintaining its suit.

## NATURE AND STAGE OF THE PROCEEDINGS

On January 14, 2011, Butamax filed suit against Gevo, Inc. ("Gevo") alleging infringement of the '188 patent, and amended its Complaint on August 11, 2011, to include the '889 patent. (11-54 D.I. 1, 41). Gevo sought, and was granted, an extension of time to respond to that amended pleading, purportedly to consider the claims of the '889 patent. On September 13, 2011, Gevo answered the amended complaint and asserted, as Counterclaims, that Butamax and DuPont infringe Gevo's '375 and '376 patents. (D.I. 4). Butamax moved to dismiss those claims on a motion for judgment on the pleadings. (11-54 D.I 151). Gevo successfully opposed that motion (11-54 D.I. 371). In denying that motion, the Court accepted Gevo's representation that the issue of infringement turned on issues of "claim construction". (11-54 D.I. 371 at 3). On April 10, 2013, at the request of the parties, all claims and defenses relating to the '375 and '376 patents were severed into the above captioned action. (D.I. 1). In fact, no issue of claim construction relevant to these limitations was raised by Gevo. On July 26, 2013, the Court granted Butamax's motions for summary judgment of non-infringement of the '375 and '376 patents, and invalidity of the '375 patent, and denied Gevo's motion for summary judgment of validity of the '376 patent. (D.I. 48). Final Judgment was entered in the case on August 8, 2013,

which Judgment expressly preserved Butamax's claims for an exceptional case finding. (D.I. 51).

Butamax and DuPont now respectfully move this Court for a finding that this case is exceptional,

and for an award of such attorneys' fee and costs that this Court deems appropriate under 35

U.S.C. § 285.

## ARGUMENT

### I.   LEGAL BACKGROUND

Under 35 U.S.C. § 285, "[t]he Court in exceptional cases may award attorney fees to the

prevailing party." 35 U.S.C. § 285;[2] *Phonometrics, Inc., v. Westin Hotel Co.*, 350 F.3d 1242,

1245-46 (Fed. Cir. 2003). Section 285 was designed to act as a deterrent to the "improper

bringing of clearly unwarranted suits," "to rectify, at least in part, the injustice done the

defendant." *Mathis v. Spears*, 857 F.2d 749, 754 (Fed. Cir. 1988). Similarly, to make a party

whole, a court may invoke its inherent powers to include in its award the prevailing party's

litigation expenses. *See Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1391

(Fed. Cir. 2008). The decision to award attorneys' fees and expenses rests within the discretion

of the Court. *See Beckman Instruments, Inc. v. LKB Produkter AB,* 892 F.2d 1547, 1553 (Fed.

Cir. 1989).

A case may be found "exceptional" where the plaintiff has engaged in "vexatious or

unjustified . . . litigation" or pursued a "frivolous suit." *Beckman Instruments,* 892 F.2d at 1551;

*see also Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.,* 279 F.3d 1022, 1034 (Fed. Cir. 2002);

*In re Cyclobenzaprine Hydrochloride Extended Release Capsule Patent Litig.* C.A. No. 09-MD-

2118-SLR, 2012 WL 95592, at *1 (D. Del. Jan. 12, 2012) (citing *Epcon*). An exceptional finding

---

[2]   Federal Circuit law governs the "exceptional case" analysis. *Int'l Rectifier Corp. v. Samsung Elecs. Co., Ltd.*, 424 F.3d 1235, 1238 (Fed. Cir. 2005); *Digeo, Inc. v. Audible, Inc.*, 505 F.3d 1362, 1367-69 (Fed. Cir. 2007).

may also be warranted where the patentee "prolong[s] litigation in bad faith." *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1379 (Fed. Cir. 2008).

An unjustified or frivolous lawsuit is one that "intelligent people should have known would have no chance at success." *Multi-Tech, Inc. v. Components, Inc.*, 708 F. Supp. 615, 620 (D. Del. 1989); *see also Haynes Int'l Inc. v. Jessop Steel Co.,* 8 F.3d 1573, 1579 (Fed. Cir. 1993) ("A frivolous infringement suit is one which the patentee knew or, on reasonable investigation, should have known, was baseless."). Where the accused infringer prevails in the underlying action, factors relevant to determining whether a case is exceptional include "the closeness of the question, pre-filing investigation and discussions with the defendant, and litigation behavior." *Computer Docking Station Corp.*, 519 F.3d at 1379. The Court may infer that the patentee acted in bad faith where "the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court." *Phonometrics Inc.*, 350 F.3d at 1246; *Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 811 (Fed. Cir. 1990).

## II.    DESPITE BEING AWARE OF EVIDENCE THAT BUTAMAX DOES NOT INFRINGE THE '375 AND '376 PATENTS, GEVO FAILED TO CONDUCT AN ADEQUATE PRE-FILING INVESTIGATION AND UNREASONABLY MAINTAINED THE LAWSUIT

### A.    Gevo Failed To Undertake A Simple Pre-Filing Inquiry That Would Have Indicated To a Reasonable Patentee That Butamax Does Not Infringe The '375 or '376 Patents

As a matter of policy and reasonableness, when a putative defendant offers a patentee pre-filing information and the opportunity to confirm non-infringement in an effort to spare the parties and the Court needless expense, wasted time, and effort, the plaintiff should follow through on that offer. If, however, the plaintiff refuses to investigate and instead immediately files a baseless suit and loses, it should expect that its ill-advised lawsuit may be found to be exceptional within 35 U.S.C. § 285.

This case poses just such a scenario. Indeed, this is not a case involving a product-by-process claim, where the accused infringer refused to provide discovery on its process and the patentee is therefore justified in inferring infringement based on the product alone. This is the exact opposite—Butamax voluntarily offered to give Gevo access to its technology so that Gevo could adequately investigate its claims. Gevo inexplicably ignored that offer. The information that Gevo knew, and could have further uncovered, before it ever filed its counterclaims should have dissuaded it from ever asserting infringement counterclaims against Butamax. For reasons of its own, Gevo refused that path and persisted with baseless litigation. A summary of the history of this litigation bears this out.

On January 14, 2011, Butamax filed a complaint against Gevo, alleging infringement of Butamax's '188 patent. (11-54 D.I. 1). Over two months later, Gevo filed an answer to Butamax's complaint. (11-54 D.I. 10). On August 11, 2011, Butamax amended its Complaint to include allegations of infringement of its newly issued '889 patent. (11-54 D.I. 40, 41). Gevo immediately issued a press release, claiming that Butamax's '889 patent "is Invalid and Not Infringed" and that Butamax's claims are "without merit." (Ex. 7). A week after this pronouncement, however, Gevo's counsel asked for a thirty day extension of time to answer Butamax's amended complaint, in order to "analyze the ['889] patent"—the same patent that Gevo had just publically declared "Invalid and Not Infringed." (Ex. 2; Ex. 8). Butamax agreed to the extension as a matter of professional courtesy. But it soon became clear that Gevo's request was only intended to buy Gevo time as it knew that the pending '375 and '376 patents were about to issue.

Indeed, just before Butamax amended its Complaint, on July 22, 2011, the PTO issued Notices of Allowance for Gevo's applications leading to the '375 and '376 patents. (11-54 D.I.

513 at GJA3003; 11-54 D.I. 514 at GJA4403). Shortly thereafter, Gevo's underwriter issued an

analyst report, making Gevo's intentions for the use of the patents against Butamax clear. The

report announced that "[a] key patent allowance sheds light on where the Butamax lawsuit may

be headed" and that "we believe the allowance is an important step toward a favorable outcome

for Gevo and putting the Butamax lawsuit behind them." (Ex. 9).

Butamax learned of the pending issuance of these claims, and anticipated Gevo's gambit.

To avoid unnecessary litigation, before Gevo's patents even issued, Butamax wrote to Gevo's

counsel to inform Gevo that Butamax had no intention of infringing the claims of Gevo's about-

to-issue patents. On September 9, 2011, Butamax's General Counsel sent a letter to General

Counsel for Gevo, detailing the actions that Butamax had taken to ensure that Butamax was not

making or using any yeast strains





Butamax received no response to this offer. Instead, minutes after the '375 and '376 patents issued, at 12:29 a.m. on September 13, 2011, Gevo filed its Answer to Butamax's Amended Complaint including Counterclaims accusing Butamax of, among other things, literally infringing Gevo's newly issued patents. (11-54 D.I. 52). Gevo's filing, asserting unrelated patents, was timely only because Butamax had agreed to the thirty-day extension that Gevo had requested, purportedly to give it time to analyze the '889 patent. Had Gevo answered Butamax's Complaint as originally scheduled, it would have been required to seek leave of Court to add its Counterclaims to the pleadings, requiring it to show, among other things, that its claims were not futile. Based on the evidence that Butamax had provided prior to the issuance of the patents, Gevo could not have succeeded with that motion.

Although Gevo was not required to take Butamax's word, Gevo failed to respond to Butamax's September 9 offer to determine whether its allegations had a basis in fact prior to filing its Counterclaims. Critically, despite Butamax's willingness to allow Gevo to verify that Butamax's yeast strains could not possibly infringe Gevo's patents, Gevo declined to perform routine tests that would have confirmed that there was no infringement. *See Judin v. United*

*States*, 110 F.3d 780, 784 (Fed. Cir. 1997) (plaintiff's pre-filing investigation is inadequate where plaintiff failed to obtain and test sample of accused device); *Eltech Sys. Corp. v. PPG Indus., Inc.*, 710 F. Supp. 622, 636-38 (W.D. La. 1988) *aff'd in relevant part,* 903 F.2d 805 (Fed. Cir. 1990) (finding the case exceptional under § 285 because the patentee unreasonably failed to test the accused products to confirm infringement prior to filing suit even though the accused infringer had voluntarily provided access to the accused products); *Avocet Sports Tech. Inc. v. Polar Electro, Inc.*, No. C-12-02234 EDL, 2013 WL 4067823, at *2 (N.D. Cal. Aug. 1, 2013) (pre-filing investigation is inadequate where the patentee did not physically test the accused products or identify what instructions manuals led patentee to believe that the products infringed). *Cf. Intamin Ltd. v. Magnetar Techs, Corp.*, 483 F.3d 1328, 1338 (Fed. Cir. 2007) (lack of testing is not unreasonable where "the technology present[s] the patentee with unreasonable obstacles to any effort to obtain a sample" and the patentee had undertaken other pre-filing inquiries). Although testing is not always required in an adequate pre-filing investigation, where, as here, Gevo had specific, detailed evidence of non-infringement, foregoing testing or obtaining offered information was not reasonable. This is particularly true because Butamax had voluntarily and expressly offered Gevo access to its technology and the opportunity to verify that there was no infringement. Gevo was apparently not interested in doing so.

Neither is this a case where lack of testing was reasonable because there was otherwise sufficient evidence of infringement based on other pre-filing inquires. *Cf. Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295 (Fed. Cir. 2004) (failure to test is not unreasonable where the patentee was able to determine that the active ingredient required by the claims was present in the accused product based on product advertising and labeling, and testing would have provided no additional information). Indeed, Butamax's September 9 letter specifically advised Gevo that

–10–

Butamax's strains did not contain an α-ketoisovalerate decarboxylase from *Lactococcus lactis*—a limitation of all the claims of the '375 patent—and additionally did not contain an overexpression of genes expressing Aft proteins—a limitation of all the claims of the '376 patent. (Ex. 1 at 2). Despite being faced with this information, Gevo did not even inquire about the specific makeup of the strains. Under the circumstances, having had specific evidence of non-infringement brought to its attention, it was not reasonable for Gevo to believe that Butamax was infringing its patents and then to rush to court without investigating further. It had to be clear to Gevo that there was no literal infringement, and given the substantial differences between the claimed limitations and Butamax's strains, there could be no infringement under the doctrine of equivalents. Additionally, because Gevo specifically limited the claims of the '375 patent to a KIVD from *L. lactis* to overcome prior art (D.I. 48 at 18-19)—a fact that Gevo was undoubtedly intimately aware—Gevo did or should have known that it would be barred by prosecution history estoppel from asserting the Doctrine of Equivalents with respect to that patent. If Gevo claims that it did not know these clear facts, such ignorance can only be attributed to a studied indifference to them or perhaps Gevo's zeal to issue a press release showing somehow that Gevo was fighting back against Butamax in Court.

That Gevo knew that its pleading was weak is evident in the careful and veiled statements in its Counterclaims: "[t]hese allegations have evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." (11-54 D.I. 52 Counterclaim ¶¶ 18, 28). Notably, Gevo's counterclaims made no mention of the September 9 letter or of Butamax's offer for verification. Nor did Gevo identify what further investigation or discovery it needed, that was not adequately addressed by Butamax's offer for verification. Yet, Gevo alleged that the allegations were "[t]o the best of Gevo's knowledge" and "formed after an

inquiry reasonable under the circumstances," (11-54 D.I. 52 Counterclaim ¶¶ 18, 28) despite having made no attempt to verify whether Butamax was engaged in potentially infringing activity since the issuance of the '375 and '376 patents. Gevo's failure to inquire cannot be reasonable under these circumstances.

Nor did Gevo articulate any excuse or justification for ignoring Butamax's offer for verification. Gevo's driving motivation to file its counterclaims under any circumstances is evident. The same day Gevo filed its counterclaims, Gevo issued a press release touting the newly issued '375 and '376 patents, announcing that it had "filed a lawsuit against Butamax™ and its affiliate DuPont," and citing Gevo's General Counsel as stating that Gevo's "lawsuit is based on Butamax's own publications describing their use of the technology that Gevo invented first and for which we have received patents." (Ex. 3). Of course, the press release made no mention of Butamax's September 9 letter or the facts communicated by Butamax to Gevo before the claims were asserted showing that, in fact, Butamax was not using the technology cited by Gevo's General Counsel as the basis for its Counterclaims. That same day, Gevo's underwriter issued a "Hot Comment," publicizing the lawsuit and noting that "[t]he countersuit gives Gevo a third strategy," namely, causing Butamax and DuPont to have to undertake "preparation and discovery for the pending court dates to respond to the original infringement allegations – which now includes all relevant personnel and material at DuPont that were involved with Butamax." (Ex. 4 at 1). As is apparent from Gevo's public statements, the purpose of its counterclaims was driven less by the bona fides of the allegations than the perceptions of Gevo in the marketplace and its desire to gain an advantage in the pending litigation.

Gevo could not have reasonably believed that it had a basis to maintain a claim for literal infringement against Butamax. Yet, Gevo asserted literal infringement of both patents. Indeed, as

the Court recognized in its Memorandum Opinion, Gevo never conceded that there is no literal infringement of the '375 patent (D.I. 48 at 23) and did not concede that there is no literal infringement of the '376 patent until it filed its Opposition to Butamax's motion for summary judgment of non-infringement—██████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██ In that time, Butamax had been required to vigorously defend against these claims, and to incur the burden and expense of fact and expert discovery and extensive motion practice on the issue.

**B.     Gevo's Own Prosecution History Must Have Led Gevo to Conclude From the Beginning that it Could Not Assert a Claim Under The Doctrine Of Equivalents for the '375 Patent**

Throughout this litigation, Gevo maintained that Butamax, aside from literally infringing, also infringed the '375 and '376 patents under the doctrine of equivalents. Gevo, however, knew or should have known that these arguments were baseless and had no chance at success. Not surprisingly, the Court found every one of Gevo's infringement claims legally deficient, rejecting Gevo's claims regarding the '375 patent on three separate grounds that preclude Gevo from relying on the doctrine of equivalents. (D.I. 48).

As Gevo well knew, Gevo initially tried to prosecute a broad claim covering the use of any enzyme to convert α-ketoisovalerate to isobutyraldehyde and a dependent claim specifying that the enzyme should be a 2-keto acid decarboxylase. (D.I. 48 at 18). The Examiner, rejected these claims over prior art, including Butamax's '188 patent. (*Id.* at 19). Gevo argued in response that it achieved unexpected results and adopted the examiner's suggestion to limit its claim to the "specific KIVD protein from *L. lactis*," with which it had allegedly demonstrated unexpected results. But Gevo also noted that it would look into broadening the scope of KIVD enzymes

–13–

claimed. (*Id.*). Gevo acknowledged that it had narrowed its claims during prosecution, but alleged that prosecution history estoppel does not apply because the ███ enzyme used by Butamax was unforeseeable during the prosecution of the '375 patent. (*Id.*). This argument, however, was wholly unreasonable, because, aside from the enzyme's availability in publically available databases, ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████. However, instead of expanding the scope of KIVDs claimed in the '375 patent as Gevo told the examiner it would do, Gevo chose to push the '375 claims to quick issuance, accepting narrow claims limited to the specific KIVD protein from *L. lactis* and, while the application leading to the '375 patent was pending, to file a new provisional application claiming the ███ enzyme. (D.I. 48 at 21; D.I. 18 at 17, U.S. Patent Appl. No. 61/512,810).

Gevo was or should have been well aware of the limitations of its claims in light of the prosecution history of the '375 patent. *Multi-Tech, Inc.*, 708 F. Supp. at 622 ("[the patentee] was in the best position to understand the nature of the events surrounding the prosecution of its patent."). Yet, Gevo filed a meritless infringement claim, forcing Butamax to defend against a claim that never had a chance of success. Gevo's actions make the case exceptional under § 285. *Id.* ("We find that continuing to advance this case in light of the well-documented prosecution history, which indicates unequivocally that [the accused products] were excluded from the scope of the patent, is evidence that the plaintiff's actions were taken at the very least with gross

negligence. This factor makes this case exceptional."); *Astrazeneca AB v. Dr. Reddy's Labs, Ltd.*, 07 CIV. 6790 (CM), 2010 WL 1375176 (S.D.N.Y. Mar. 30, 2010) (holding that patentee's advancing of the case despite the fact that its positions contradicted its representations to the patent office and the examiner's reason for allowance makes the case exceptional);

**C.    Gevo's Position on Infringement of the '376 Patent Under the Doctrine of Equivalents Amounts to Asserting That Opposites are Equivalent**

Gevo fares no better with respect to the '376 patent. That Butamax does not practice the claims of the '376 patent is evident from a reading of the patent and a description of Butamax's strains. Gevo's equivalence theory—that overexpressing one gene is equivalent to deleting an entirely different gene—is outright illogical, and, as the Court recognized, seeks to convert a multi-limitation claim to one of fewer limitations, and to equate the clamed structure to its antithesis. (D.I. 48 at 25, 27). This, alone, qualifies the action as exceptional. *Astrazeneca*, 2010 WL 1375176, at *1 (finding no question that the case is exceptional where "defendants' products and processes are in key respects *exactly the opposite* of what plaintiffs claim in their patents" and where plaintiffs brought an action not because they had any evidence of infringement, but because defendant had not proven to plaintiffs' satisfaction that it does not infringe).

The lack of basis in Gevo's equivalence arguments with respect to the '376 patent is further evidenced by positions taken by Gevo and its experts during this litigation. ███████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████     ██████████

████████████████████████████████████████████████████████████████

████████████████████     Gevo has yet to explain how something can be "more effective," "superior," and "better" and at the same time be equivalent to something else. These two positions are

irreconcilable and evidence that Gevo knew or should have known of the futility of its

equivalence claims. ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████ Maintaining this lawsuit despite this uncontroverted evidence of non-equivalence

too was unreasonable and warrants finding the case exceptional under § 285.

    **D.**    **Gevo Relied on a Claim Construction That It Refused To Share With The Court And Which Was Clearly Contradicted by the Patent Specifications and Prosecution Histories As a Basis to Initiate and Maintain The Lawsuit**

On September 14, 2011, a day after Gevo filed its Counterclaims, Gevo General Counsel

sent a letter to Butamax General Counsel, in which he, for the first time, acknowledged receipt of

Butamax's September 9 letter. (Ex. 12). Gevo's September 14 letter, with a passing reference to

"verification," was also Gevo's first acknowledgement of Butamax's pre-suit offer for Gevo to

confirm whether Butamax was engaging in infringing activities. On September 16, 2011,

Butamax replied to Gevo's September 14 letter, ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████ Gevo replied on September 21, 2011, ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████ This demand completely ignored that Butamax had already provided Gevo with a

detailed description of the actions Butamax had undertaken to ensure that there would be no

infringement. Gevo's letter did not indicate how that information was insufficient or what

additional information Gevo sought. Indeed, though Gevo had not disputed the truth of Butamax's assurances, and though, in light of this evidence, there was no reasonable basis for Gevo to maintain its Counterclaims, Gevo insisted on maintaining them, citing issues of claim construction. Indeed, Gevo opposed Butamax's motion for judgment on the pleadings, arguing that claim construction issues prevented the early resolution of the case. (11-54 D.I. 185 at 11-13). The Court relied on Gevo's representations and deferred addressing claim construction issues until the close of fact and expert discovery. But claim construction played no part in the ultimate resolution of this case.

In line with its strategy of imposing on Butamax the burden of discovery on all relevant personnel and material that were involved with Butamax, on September 22, 2011, counsel for Gevo demanded expedited discovery from Butamax on a broad range of topics, ████████ ████████████████████████████████████████████████████ Again diligently attempting to streamline the resolution of Gevo's allegations and to avoid burdening the Court with unnecessary litigation, counsel for Butamax proposed a process that would allow Gevo to confirm that there was no basis for Gevo's Counterclaims and on October 31, 2011, the parties entered into a Stipulation Regarding Disclosure of Information. (Ex. 16). While Butamax declined to provide all of the discovery that Gevo demanded, Butamax remained willing to provide sufficient information to allow Gevo to verify that Butamax does not infringe the '375 and '376 patents. The stipulation also gave Gevo the opportunity to seek more information from Butamax after the initial exchange, should it conclude that the provided information was not sufficient. (*Id.*). In exchange, Gevo agreed to provide Butamax with its "proposed claim constructions of [selected] terms of the claims of the '375 and '376 patents that formed the basis for Gevo's allegations, "along with citations to the intrinsic evidence that Gevo believes supports

the constructions," and a statement as to whether it alleges that each claim is infringed literally or under the doctrine of equivalents, "as well as an explanation of, and the basis for, the scope of equivalents" for each claim element at issue. (Ex. 16 at 2, 3).

Pursuant to the terms of the Stipulation, the parties exchanged information simultaneously on November 4, 2011.



Having received all the information about Butamax's technology that it requested, in a November 11, 2011 disclosure, counsel for Gevo reiterated the claim construction it had provided on November 4, and unilaterally stated that "neither party shall cite or refer to this non-binding disclosure in any correspondence to or filing with the Court." The stipulation between the parties contained no such provision. This limitation is telling, as Gevo's unwillingness to share its claim construction with the Court and the public can only be based on the frivolous

nature of Gevo's arguments. Based on this refusal, the Court is justified in drawing an inference that the construction is not favorable to Gevo's contention that it had sufficient basis to initiate a lawsuit. *Eltech Sys. Corp.*, 710 F. Supp. at 636-37 (drawing an inference that a pre-filing investigation report was not favorable to plaintiff's contention that it had sufficient basis for bringing infringement allegations where it was not produced during discovery or offered at trial). Gevo should not be allowed to rely on a claim construction that it refused to share with the Court, preventing Butamax from addressing Gevo's analysis with the Court and bringing a meritless case to early resolution.

That perhaps Gevo itself lacked faith in its preliminary claim construction was confirmed by Gevo easily agreeing with Butamax's interpretation of the key elements of the disputed terms at issue. (11-54 D.I. 480, Exs. C, D). Specifically, Gevo agreed that "an α-ketoisovalerate decarboxylase from in *Lactococcus lactis*" is "an enzyme that has the amino acid sequence of an α-ketoisovalerate decarboxylase found in *Lactococcus lactis*," (11-54 D.I. 480, Ex. C), and that "recombinantly overexpressed one or more polynucleotides encoding one or more activators of ferrous transport (Aft) proteins" means that the "claimed yeast has been genetically modified to have an elevated level of DNA or RNA encoding Aft protein in cells," (11-54 D.I. 480, Ex. D). If Gevo's preliminary claim construction was reasonable and well-founded, Gevo would not have acquiesced to a construction, under which, there can be no doubt that Butamax does not and has not infringed the '375 and '376 patents. To the extent that Gevo would now argue that it has not materially altered its claim construction position, such argument is tantamount to an admission that Gevo never had a basis to assert infringement against Butamax. Gevo's initial claim construction notwithstanding, having apparently resolved the issue that purportedly caused it to maintain its Counterclaims, Gevo should have withdrawn the Counterclaims no later than August

–19–

17, 2012, when it agreed with Butamax's interpretations of the key disputed elements. (11-54 D.I. 480). But Gevo again insisted on maintaining its counterclaims.

## III.   IN LIGHT OF THE EXCEPTIONAL NATURE OF THIS CASE, THE COURT SHOULD AWARD BUTAMAX ITS ATTORNEYS' FEES AND COSTS

"[A]n award of attorney fees is the only protection available to an unjustly accused infringer." *Astrazeneca,* 2010 WL 1375176, at *9 (*citing Abraskin v. Entrecap Corp.,* 55 F. Supp. 2d 224, 229 (S.D.N.Y. 1999), *aff'd,* 2000 WL 961362 (Fed. Cir. July 11, 2000) (per curiam)). Here, Butamax is an unjustly accused infringer, who, despite its best efforts, was forced to expend significant effort and expense through nearly two years of litigation defending itself against the claims of these patents. Considering the totality of the circumstances, including Gevo's hasty filing in complete disregard of the clear evidence of non-infringement provided by Butamax, and failing to make even simple inquiries to confirm its claims, it is appropriate to award Butamax its fees under 35 U.S.C. § 285, and the Court's inherent authority.

If the Court grants Butamax's application for reasonable attorneys' fees and costs, Butamax requests 30 days from such order to submit the requisite documents of the fees and disbursements it seeks.

## CONCLUSION

For the foregoing reasons, Butamax and DuPont respectfully request that the Court grant their Motion and find this case exceptional under section 285, and the inherent power of the Court, and further to set a schedule for the submission of detailed documentation for Butamax's and DuPont's attorneys' fees and related costs and expenses.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Leora Ben-Ami
Thomas F. Fleming
Christopher T. Jagoe
Oliver C. Bennett
Benjamin A. Lasky
Peter B. Silverman
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel: (212) 446-4800

*Attorneys for Plaintiff/Counterclaim Defendant*
*Butamax$^{TM}$ Advanced Biofuels LLC*

Dated: November 8, 2013
PUBLIC VERSION
Dated: November 19, 2013
1130671 / 36429

By:   */s/ David E. Moore*
      Richard L. Horwitz (#2246)
      David E. Moore (#3983)
      Bindu A. Palapura (#5370)
      Hercules Plaza, 6th Floor
      1313 N. Market Street
      Wilmington, DE 19801
      Tel: (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com
      bpalapura@potteranderson.com

*Attorneys for Plaintiff/Counterclaim Defendant*
*Butamax$^{TM}$ Advanced Biofuels LLC and*
*Counterclaim Defendant E. I. du Pont*
*de Nemours and Company*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on November 19, 2013, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on November 19, 2013, the attached document was Electronically Mailed to the following person(s):

Thomas Grimm
Jeremy A. Tigan
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P. O. Box 1347
Wilmington, DE  19899-1347
tgrimm@mnat.com
jtigan@mnat.com

Michelle S. Rhyu
Daniel Knauss
Adam C. Trigg
Cooley LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA  94306-2155
rhyums@cooley.com
dknauss@cooley.com
atrigg@cooley.com
zGevoButamaxLitigation@cooley.com

Melissa Harwood
Cooley LLP
719 Second Avenue, Suite 900
Seattle, WA  98104-1732
mharwood@cooley.com
zGevoButamaxLitigation@cooley.com

Stephen C. Neal
Ben Damstedt
Matthew J. Brigham
Cooley LLP
3175 Hanover Street
Palo Alto, CA  94304-1139
nealsc@cooley.com
bdamstedt@cooley.com
jdyer@cooley.com
mbrigham@cooley.com
zGevoButamaxLitigation@cooley.com

James P. Brogan
Cooley LLP
380 Interlocken Crescent, Suite 900
Broomfield, CO  80021-8023
jbrogan@cooley.com
zGevoButamaxLitigation@cooley.com

Erik Milch
Cooley LLP
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, VA  20190-5656
emilch@cooley.com
zGevoButamaxLitigation@cooley.com

Andrew Keith
Joshua Marcus
Cooley LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC  20004
akeith@cooley.com
jmarcus@cooley.com
zGevoButamaxLitigation@cooley.com

By:   _/s/ David E. Moore_____
        Richard L. Horwitz
        David E. Moore
        Bindu A. Palapura
        POTTER ANDERSON & CORROON LLP
        Tel:  (302) 984-6000
        rhorwitz@potteranderson.com
        dmoore@potteranderson.com
        bpalapura@potteranderson.com

1012762 / 36429